UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| MYCAL L. ASHBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:16-cv-00190-RLY-MPB |
| | ) | |
| WARRICK COUNTY SCHOOL CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

On December 16, 2014, Mycal L. Ashby showed up to the Warrick County Museum located in Boonville, Indiana to attend a Christmas program in which the Loge Elementary School choir was performing. Ms. Ashby's son participated in the choir. However, Ms. Ashby, who is confined to a wheelchair due to a disability, was not able to enter the Museum because it was not fully accessible to persons with disabilities. As a result, she did not see her son perform that night. To make matters worse, this scenario occurred the following year in substantially similar circumstances. In December of 2015, Ms. Ashby showed up to the Museum, was informed that it was still not accessible, and was likewise unable to see her son perform in the Christmas program. Since then, the Museum has installed and maintains a fully operational elevator.

But that is of little relief to Ms. Ashby, who suffered from being denied access to the Museum in 2014 and 2015. On September 15, 2016, she filed the present action against Warrick County School Corporation seeking compensatory damages for disability

discrimination under the Americans with Disabilities Act and the Rehabilitation Act. (Filing No. 1). On June 20, 2017, she filed her Motion for Partial Summary Judgment, and on July 27, 2017, Warrick County School Corporation filed a Cross-Motion for Summary Judgment. (Filing Nos. 36 and 40). The threshold issue—the one the court finds dispositive—is whether the Christmas program at the Museum was a "service, program, or activity" of Warrick County School Corporation as opposed to that of the Museum. The court finds that the Christmas Program was not provided by Warrick County School Corporation, or otherwise attributable to Warrick County School Corporation. Accordingly, the court **DENIES** Plaintiff's Motion for Partial Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

## I. Background

### A. The Parties

Mycal L. Ashby is an adult with a disability who resides in Warrick County, Indiana. (Filing No. 1, Complaint at 2, ¶ 6); (Filing No. 36-1, Declaration of Mycal Ashby ["Ashby Dec."] at 1, ¶¶ 1, 2). Since infancy, she has had transverse myelitis, a condition that paralyzes her from the chest down. (Ashby Dec. at 1, ¶ 2). As a result, she is unable to stand or walk and is confined to a motorized wheelchair for mobility. (*Id.* ¶ 3). Ms. Ashby is married to her husband, Robert Ashby, and together, they have one son. (*Id.* ¶ 4).

Warrick County School Corporation ("Warrick Schools") is a public school corporation that operates several schools in Warrick County, Indiana. (Complaint at 2, ¶ 7). One of the schools operated by Warrick Schools is Loge Elementary School. (*Id.*).

2

Ms. Ashby's son attended Loge Elementary School from grades one through five. (Ashby Dec. at 1, ¶ 6). Since Ms. Ashby's son began attending Loge Elementary School, she has regularly attended school events. (*Id.* at 2, ¶ 7). The Loge Elementary School staff knew Ms. Ashby and was aware that she used a motorized wheelchair. (*Id.*).

### B. Loge Elementary School Choir

During the 2014-2015 and 2015-2016 school years, Ms. Ashby's son participated in the Loge Elementary School choir (the "Choir"). (*Id.* ¶ 10). The Choir was an extra-curricular activity that was open to students in the fourth and fifth grade and was held after regular school hours. (*Id.* ¶¶ 10-12); (Filing No. 41-1, Affidavit of Abby Roach ["Roach Aff."] at 1, ¶ 3). The program was led by Abby Roach, who was employed as a music teacher for Loge Elementary School. (Roach Aff. at 1, ¶¶ 2, 3). Roach was not paid for the time spent leading the choir as it was not a part of her regular teaching duties. (*Id.* ¶ 3). Once a week, students would practice and rehearse after school. (Ashby Dec. at 2, ¶ 12). Participation in the Choir was strictly voluntary as there were no attendance or performance requirements. (Roach Aff. at 2, ¶ 5). No class credit was offered for participation, and students were not evaluated for skill. (*Id.*).

Though Roach declared that the purpose of the choir was to acquaint students with singing in an informal environment and not to perform for others, the choir indeed performed at a number of events during the school year. (Ashby Dec. at 2, ¶ 13); (Roach Aff. at 1, ¶ 4). The events included a Fine Arts Night performance and a Veteran's Day program, both of which were held at the elementary school. (Roach Aff. at 2, ¶ 6). Ms. Ashby attended the Veteran's Day program in 2014. (Ashby Dec. at 2, ¶ 13).

3

### C. The Warrick County Museum

The Museum is located in Boonville, Indiana and is owned and operated by Warrick County Museum Inc., a nonprofit corporation. (Filing No. 41-2, Affidavit of Gretchen Powers ["Powers Aff."] at 1, ¶ 2). The original building was constructed in 1901 as an elementary school and then subsequently converted into the Museum in 1976. (*Id.* ¶ 3). The Museum is not in any way affiliated with Warrick Schools. (*Id.* ¶ 4). Until September of 2016, the Museum did not have an operational elevator in the building. (*Id.* ¶ 3).

Since 2010, the Museum has invited schools to perform at the Museum during the winter holidays. (*Id.* at 2, ¶ 5); (Filing No. 36-6, Defendant's Answers to Plaintiff's First Set of Interrogatories ["Interrogatories"], at 4-5 ¶ 6). Among these schools are Boonville High School, Lynnville Elementary School, Oakdale Elementary School, and—most relevant here—Loge Elementary School. (Interrogatories at 3-4, ¶ 3); (Powers Aff. at 2, ¶ 5). Gretchen Powers, the President of the Board of Warrick County Museum Inc., explained that these events are organized, advertised, and operated solely by the Museum. (Powers Aff. at 2, ¶ 5). At these events, the Museum solicits donations, none of which are shared with or paid to Warrick Schools. (*Id.*). The schools also do not pay a rental fee to utilize the facility. (*Id.*). The Museum opened the events up to the public at-large. (Roach Aff. at 2, ¶ 8).

### D. The Christmas Programs at the Museum

On September 19, 2014, Powers sent an e-mail to Roach and invited the Choir to perform at the Museum's Christmas Program (the "Program" or Christmas Program").

(Filing No. 36-5, Deposition of Gretchen Powers ["Powers Dep."], Ex. 3, at 33-34).[1] Eventually both agreed that the Choir would perform on December 16, 2014 at 6:00 p.m. (*See* Powers Dep. at 24); (Ashby Dec. at 7, Ex. 1). The Museum advertised the Christmas Program in the local newspaper. (Powers Dep. at 7, ll. 11-14).[2] The school also advertised the Choir's Performance in its monthly calendar. (Ashby Dec. at 7, Ex. 1).[3]

In late November or early December of 2014, Ms. Ashby's son brought home a flyer that indicated the choir would be performing at the Museum and families were welcomed to attend. (Ashby Dec. at 2, ¶ 14). Ms. Ashby was eager to attend and see her son perform in the Christmas Program. (*Id.* at 2-3, ¶¶ 15, 19). On the night of the Program, the Ashbys drove to the Museum as did the rest of the students in the choir as transportation was not provided by Warrick Schools. (*See id.* at 3, ¶ 21); (Filing No. 36-3, Deposition of Abby Roach ["Roach Dep."] at 12, ll. 11-13). In addition to Roach, the principal of Loge Elementary School, Lynn Pierce, was also in attendance. (*See* Roach Dep. at 18 ll. 16-23; at 19, ll. 5-11). Once they arrived at the Museum, the Ashbys had trouble parking as there were no parking spaces for persons with disabilities. (Ashby Dec. at 3, ¶ 21). Mr. Ashby went inside and was told the building was not accessible. (*Id.* ¶ 22). Because there was not enough time to take Ms. Ashby home and return to the Museum for the Program, Mr. Ashby dropped Ms. Ashby off at a nearby Walmart and

---

[1] The e-mails are not numbered, so the page number refers to the page number of the document submitted as an exhibit.
[2] The deposition page is number 22.
[3] The 2014 and 2015 school calendars were attached to Ms. Ashby's Declaration.

then returned to the Museum to watch the concert. (*Id.* ¶ 23). Ms. Ashby sat in tears until the concert was over and Mr. Ashby returned to pick her up. (*Id.*).

The next day, Ms. Ashby called Pierce to voice her displeasure about not being able to attend the Program the night before. (*Id.* at 3-4, ¶ 24). She was told by Pierce that it would not happen again. (*Id.*). That same day, the Choir performed at a nearby nursing home. (*Id.* ¶ 25). The nursing home was accessible, and Ms. Ashby was able to attend this performance. (*Id.*).

The following academic year, 2015-2016, on September 24, Powers again reached out to local schools to invite them to perform at the Museum. (Powers Dep, Ex. 3 at 19). Roach agreed to perform on December 17 at 6:30 p.m. (*See id.* at 16). The Christmas Program was once again advertised on the school calendar. (Ashby Dec. at 8, Ex. 2). In the invitation sent to the attending schools, Powers stated that the Museum was in the process of installing an elevator. (Powers Dep., Ex. 3 at 16). She reiterated in October that it was safe to say the elevator will be available. (*Id.* at 15). Based on these e-mails, it was Roach's understanding that the Museum would have an operational elevator for the Christmas concert that December. (Roach Aff. at 4, ¶ 14).

The Ashbys, similar to the previous year, received notice that the Choir would be performing at the Museum. (Ashby Dec. at 4, ¶ 26). Mr. Ashby contacted both Roach and Pierce to determine whether the Museum would be accessible. (*Id.* ¶ 27). According to Mr. Ashby, he was told that it would be accessible. (*Id.*). Based on what her husband had conveyed, Ms. Ashby did not contact the Museum to see if it had been made accessible. (*Id.* at ¶ 28).

6

However, when Roach showed up on December 17, she learned that the elevator was not yet operational. (Roach Aff. at 4, ¶ 14).[4] Unfortunately, much like the previous year, the Ashbys drove to the Museum to attend the Christmas Program and were informed that the Museum was still not accessible. (Ashby Dec. at 4-5, ¶ 30). Ms. Ashby was once again left in tears, dropped off at the nearby Walmart, and picked up after the Program. (*Id.* at 5, ¶ 31).

Subsequently, Mr. Ashby confronted Roach and she apologized for the Museum not being accessible—just as she did the previous year. (Roach Aff. at 3, ¶ 13). Mr. Ashby also confronted Pierce, who stated that the school had no control over the installation of the elevator. (Filing No. 36-2, Deposition of Lynn Pierce at 13, ll. 18-25). Thereafter, Mr. Ashby voiced his concerns to the Superintendent, Brad Schneider, who responded that it was unfortunate, but the Christmas Program was not a school corporation event and directed Mr. Ashby to contact someone from the museum with his concerns. (Filing No. 36-8, Deposition of Brad Schneider at 6-7, ll.17-25; 1-5).

The following lawsuit ensued.

## II. Legal Standard

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a

---

[4] Powers sent another e-mail on December 12 stating that there would be no elevator, but it appears that Roach was not a recipient of this e-mail. (Powers Dep., ex. 3 at 13-14).

7

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

When reviewing a motion for summary judgment, the court resolves all factual disputes and draws all reasonable inferences in the non-moving party's favor. *Calumet River Fleeting, Inc. v. International Union of Operating Engineers, Local 150, AFL-CIO*, 824 F.3d 645, 648 (7th Cir. 2016). Where, as here, the court is faced with cross-motions for summary judgment, each motion is to be analyzed individually to determine whether the summary judgment standard has been met. *See id.* at 647-48.

## III. Discussion

### A. The Americans with Disabilities Act

After recognizing a need for comprehensive legislation to address discrimination against persons with disabilities, Congress passed the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"). *Tennessee v. Lane*, 541 U.S. 509, 516 (2004). One of the stated purposes of the ADA was "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA is divided into three different sections—each addressing a different context of disability discrimination. *Todd v. Carstarphen*, 236 F.Supp.3d 1311, 1326 (N.D. Ga. 2017). Title I addresses discrimination against persons with disabilities in employment, *see* 42 U.S.C. §§ 12111–12117; Title II addresses discrimination against persons with disabilities in public services provided by governmental entities, *see* 42 U.S.C. §§ 12131–12165; and Title III

addresses discrimination against persons with disabilities in places of public accommodation, *see* 42 U.S.C. §§ 12181–12189. *Lane*, 541 U.S. at 516-17; *Todd*, 236 F.Supp.3d at 1326. Claims ordinarily fall into one of the three sections. *See Neisler v. Tuckwell*, 807 F.3d 225, 227-228 (7th Cir. 2015) (holding that Title II and Title III do not cover a prisoner's claim of disability discrimination in employment as Title I is the exclusive remedy for such claims under the ADA).

Plaintiff has sought relief under Title II, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A person with a disability is "qualified" when she, "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). To make out a *prima facie* case under Title II, Plaintiff must show that (1) she is a qualified individual with a disability; (2) that she was denied the benefits of the services, programs, or activities of, or otherwise subjected to discrimination by, a public entity; and (3) the denial or discrimination was by reason of her disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015).

## B. The Rehabilitation Act

The Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 *et. seq.* ("RA"), also affords protections—albeit more limited—to persons with disabilities in public programs and services. Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Under the RA, a plaintiff is required to show that "(1) [s]he suffers from a disability as defined in the statute, (2) she is qualified to participate in the program in question, with or without a reasonable accommodation, and (3) [] she either was excluded from participating in, or denied the benefit of that program based on her disability." *Khan v. Midwestern University*, --- F.3d ---- , 2018 WL 416838, at *4 (7th Cir. Jan. 16, 2018) (citing *Novak v. Bd. of Trs. of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015)). Because courts generally analyze and apply the RA and the ADA in a consistent manner, the court's analysis under the ADA applies equally to the RA. *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir. 2004); *see also Novak*, 777 F.3d at 974.[5]

---

[5] A plaintiff is also required under the RA to show that the program at issue received financial assistance from the federal government. *Novak*, 777 F.3d at 974. Here, however, the parties do not dispute that Warrick Schools is a recipient of federal financial assistance. (Complaint at 5, ¶ 36); (Filing No. 15, Answer at 5, ¶ 36).

10

### C. Whether the Christmas Programs at the Museum were a "service, program, or activity" of Warrick Schools.

The threshold issue thus is whether the Christmas Program at the Museum in 2014 and in 2015 was a "service, program, or activity" of Warrick Schools because if not, then the ADA does not apply. The parties agree that this is a question of law. (Filing No. 43, Plaintiff's Response in Opposition, at 3 ("Whether each concert was a service, program, or activity of Loge Elementary School and WCSC is a legal question, which is ultimately up to the Court to resolve."); Filing No. 44, Warrick Schools Reply Brief, at 1 ("At the heart of the legal dispute in this case is the question of law as to whether the Museum Program qualifies as a service, program, or activity of Warrick Schools.")).

The terms service, program, or activity are not defined in the ADA. *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 782 (7th Cir. 2002). However, courts have interpreted service, program, or activity broadly to mean "anything that a public entity does." *Id.* (quoting 28 C.F.R. pt. 35, app. A); *see also Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (collecting cases holding the same). These terms have also been construed to mean the same as "program" or "activity" under the RA—which are defined as "all operations" of a public entity. *See Frame v. City of Arlington*, 657 F.3d 215, 225 (5th Cir. 2011) (en banc), *cert. denied*, 565 U.S. 1200 (2012). Plaintiff has thus cited numerous authorities approving of a broad interpretation of the terms service, program, or activity under the ADA. *See Salinas v. City of New Braunfels*, 557 F.Supp.2d 771, 775 (W.D. Tex. 2006) (collecting cases).

While these cases support generally the proposition that the Christmas Program at the Museum was a "service, program, or activity" under the ADA, they say far less about whether the Christmas Program was a service, program or activity *of Warrick Schools*. Indeed, Warrick Schools does not necessarily dispute that the Christmas Program is a service, program, or activity, generally. Rather, Warrick Schools disputes whether the Christmas Program was a service, program, or activity *of Warrick Schools* as opposed to that *of the Museum*.

Regulations provide that a service, program, or activity is "of" a particular entity when it is "provided or made available" by the public entity. 28 C.F.R. § 35.102. Case law is sparse with respect to when a service, program, or activity is "provided" or "made available," but a few decisions provide helpful guidance.

In *Culvahouse v. City of Laporte*, 679 F.Supp.2d 931, 938 (N.D. Ind. 2009), the court considered whether the City of Laporte's sidewalks constituted a "service, program, or activity" under Title II of the ADA. The plaintiffs—residents of the City who were disabled—argued that the City violated their rights under the ADA by failing to make the sidewalks accessible. *Id.* The City argued that the sidewalks were not a "service, program, or activity" under the ADA and thus it was not required to make all of the sidewalks ADA compliant. *Id.* at 938-39. The court, construing the ADA language broadly, found that sidewalks were a "service, program, or activity" of the City. *Id.* at 939-40. Important to its decision, however, was the fact that although the City did not own the sidewalks, the City was responsible—under state law—for keeping the sidewalks

in a reasonably safe condition and had authority and control over them. *Id.* at 940-941 (citing Ind. Code § 36-1-3-9(a)).

The second case that is helpful is *Soto v. City of Newark*, 72 F.Supp.2d 489, 490-91 (D. N.J. 1999), in which two deaf individuals sued the City of Newark and Newark Municipal Court after they were denied a sign language interpreter for their marriage ceremony, which was held in the Municipal Court. The defendants argued that Municipal Court wedding ceremonies are not "services" under the ADA, and therefore they need not accommodate the plaintiffs' request. *Id.* at 494. The court rejected that argument and found that a Municipal Court wedding was a service within the meaning of the ADA. *Id.* The court reasoned, "[w]here a governmental entity coordinates, schedules, and conducts proceedings on its own premises to benefit the public, such conduct is necessarily a 'service' to the public." *Id.*

Finally, in *Prakel v. Indiana*, 100 F.Supp.3d 661, 670 (S.D. Ind. 2015), before the court was whether a deaf individual's rights under the ADA were violated when the defendants failed to provide him with an interpreter so he could fully access the court proceedings in which his mother was involved. Both Mr. Prakel (the deaf individual) and his mother sued a number of defendants including the State of Indiana and the Supreme Court Division of State Court Administration ("Supreme Court Division"). *Id.* at 665. One of the issues was whether the plaintiffs had standing to assert their claims against the State of Indiana and the Supreme Court Division. *Id*. at 672-74. The court ultimately decided that standing as to those defendants was lacking because the plaintiffs' injuries were not "fairly traceable" to those defendants. *Id.* at 674. The court reasoned that it was

the Dearborn Court's failure to provide an interpreter that was the cause of plaintiffs' injuries and there was no evidence that the State of Indiana or the Supreme Court Division had the authority to direct or oversee that decision.[6]  *Id.* at 674-676.

The lesson learned from *Culvahouse*, *Soto*, and *Prakel* is that a "service, program, or activity" is provided by, or otherwise made available by, a public entity where such entity schedules, coordinates, and controls the particular service, program, or activity.

As applied to the present case, the Christmas Program was not a service, program, or activity provided or made available by Warrick Schools.  The undisputed evidence shows that the Museum is not affiliated in any way with Warrick Schools, and Warrick Schools does not own operate, maintain, or control the building in which the Museum is located. (Powers Aff. at 1, ¶ 4); *cf. Culvahouse*, 679 F.Supp.2d at 941.  The Museum was responsible for coordinating, scheduling, and inviting local schools to the Christmas Program, not Warrick Schools.  (*See* Powers Aff. at 2, ¶ 5; Roach Aff. at 2, ¶ 8); *cf. Soto*, 72 F.Supp.2d at 494.  The Christmas Program was operated solely by the Museum for the benefit of the community, and other than choosing what songs to sing, Warrick Schools did not organize or oversee the Program.  (Powers Aff. at 2, ¶ 5); *see Prakel*, 100 F.Supp.3d at 675.  Donations were solicited on behalf of the Museum, and no funds were shared with the schools.  (Powers Aff. at 2, ¶ 5).  Moreover, no rental fee was charged by the Museum.  *Id.*  The purpose of the Christmas Program was to benefit and raise funds

---

[6] It is true that the *Prakel* court was dealing with a standing issue and not whether something was a "service, program, or activity."  Although not technically the same, the present issue deals generally with the same broader question: who is ultimately responsible for the wrongful conduct.  As such, *Prakel* provides some insight.

for the Museum. (Roach Aff. at 2, ¶ 8; Powers Aff. at 2, ¶ 6). Simply put, the court does not find that the Christmas Program was a "service, program, or activity" that was provided or made available by Warrick Schools.

Plaintiff argues that the Christmas Program was attributable to Warrick Schools because the Choir is an extracurricular activity, the performance was under the direction of Roach, and the Christmas Program was advertised to parents in the school calendar. However, the Choir was not mandatory or otherwise a required part of the school curriculum. (Roach Aff. at 2, ¶ 5). Roach was not compensated for her time leading the choir, there were no performance requirements, and students were not graded or evaluated. (*Id.*). Moreover, Warrick schools did not provide transportation to the Museum. (Roach Dep. at 12, ll. 11-13). The facts that Loge Elementary School accepted the Museum's invitation, the Choir performed under the direction of Roach, and the Christmas Program was advertised to parents on the school calendar do not transform the Program—otherwise wholly conceived of, planned, and controlled by the Museum—into a "service, program, or activity" of Warrick Schools such that it is responsible under the ADA. Plaintiff's position simply sweeps too broadly.[7]

---

[7] Consider if the Loge Elementary School Choir was invited to perform at the Grand Ole Opry. The facts that the Choir accepted the invitation and advertised the performance to parents would not make the performance at the Opry a service, program, or activity of Loge Elementary School such that it would be liable for the Opry's lack of accessibility. Another example: consider if a high school marching band was invited to play at the Rose Bowl Parade in Pasadena, California, and the streets were inaccessible. The acceptance of that invitation and subsequent advertisement to parents would not transform the Parade into a service, program, or activity of the attending high school. If so, it would be hard to imagine why such reasoning would not apply to *any* band that accepted the invitation to perform. Although Title II applies to "anything a public entity does," it would be too broad of interpretation to conclude that these events are a

15

To be fair, this is a close case. But it is not one where Warrick Schools organized, coordinated, and planned the Christmas Program as a requirement to complement its music curriculum. *Cf. I.A. v. Seguin Independent School Dist.*, 881 F.Supp.2d 770, 781 (W.D. Tex. 2012) (undisputed that field trip planned by the school to complement its science curriculum was a service, program, or activity of the school district). Nor has Plaintiff alleged that the Choir intentionally selects inaccessible locations where the choir performs.[8] *See California ex rel. Lockyer v. County of Santa Cruz*, No. C-05-04708, 2006 WL 3086706, at *4 (N.D. Cal. Oct. 30, 2006) ("The defendants cannot purposefully select pre-1992 buildings for polling places to avoid the [ADA accessibility guidelines]."). Quite the opposite, Warrick Schools organizes and performs at events, which Plaintiff has attended, that are accessible, including some located at Loge Elementary School. (Dec. of Ashby at 2, ¶13). It is true that choir performances planned, coordinated, and controlled by Warrick Schools are "services, programs, or activities" of Warrick Schools, *see Miller v. Ceres Unified School Dist.*, 141 F.Supp.3d 1038, 1044 (E.D. Cal. 2015) (plaintiff stated a claim against school district who held a

---

service, program, or activity of each attending school. Admittedly, these are imperfect examples, but they illustrate the breadth problem with Plaintiff's position.

[8] For the same reason, the court rejects Plaintiff's argument that Warrick Schools has otherwise discriminated against Plaintiff. Plaintiff does not allege that Warrick Schools engaged in any pattern of planning programs at inaccessible locations, or that the Choir did not accommodate members after school in practices. The only allegations pertain to the Christmas Program. Accepting an invitation to perform at an inaccessible venue is not "otherwise subjecting" a person to discrimination. Moreover, it is undisputed that Warrick Schools has hosted choir concerts—which Plaintiff has attended—at the elementary school, which is fully accessible.

golf athletic event off-site), but here, Warrick Schools did not plan, coordinate, or otherwise control the Christmas Program at the Museum.⁹

## IV. Conclusion

Since the passage of the ADA, society has made great leaps in eliminating discrimination against persons with disabilities. The public too has been more willing to accept changes and make accommodations so that persons with disabilities do not feel like they have been relegated to being second class citizens. The court's role, however, is more limited. It can only apply the statute that Congress has passed, even if it leads to undesirable results. Here, the undisputed facts show that the Christmas Program at the Museum was not a "service, program, or activity" of Warrick Schools under the ADA. Since Plaintiff cannot establish a required element of her ADA claim, Warrick Schools is entitled to judgment as a matter of law. Furthermore, because the ADA and the Rehabilitation Act are co-extensive, the court finds that Plaintiff has likewise failed to show the Christmas Program was a "program" or "activity" of Warrick Schools under the Rehabilitation Act. Warrick Schools is likewise entitled to judgment as a matter of law on this claim.

---

⁹ Plaintiff also argues that the ADA regulations related to the determination and selection of a facility command a result in her favor. *See* 28 C.F.R. § 35.130(b)(4) (a public entity may not in determining the site or location of a facility make selections that are discriminatory). But that presumes that the public entity is selecting a facility *for its own* service, program, or activity. Here, Warrick Schools accepted an invitation to perform at the Museum as did other local schools. It did not plan, coordinate, or control the Program nor did it provide transportation, collect admission, or open the Program up to the public.

Accordingly, the court **DENIES** Plaintiff's Motion for Partial Summary Judgment (Filing No. 36), and **GRANTS** Defendant's Cross-Motion for Summary Judgment (Filing No. 40).

**SO ORDERED** this 7th day of February 2018.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.